# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# WESTERN DIVISION

KAREN WARE                                                                      PLAINTIFF

V.                                    NO: 4:04CV01014

LITTLE ROCK SCHOOL DISTRICT                                     DEFENDANT

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

This case was tried to the Court on February 14 - 15, 2007. Following a presentation of the testimony of the parties and witnesses and submission of exhibits, the Court makes the following findings of fact and conclusions of law:

### Findings of Fact

1. Karen Ware has a masters degree in elementary school administration and a bachelors degree in music education. She is fully certified by the Arkansas Department of Education as an elementary principal and music teacher.

2. Karen Ware began her employment in the Little Rock School District as a music teacher at Baseline Elementary School in August 1987.

3. In August 1991, Ware transferred to Rockefeller Elementary where she also worked as a music teacher.

4. Ware transferred schools again in 1995 when she began working at Franklin Elementary School as a music teacher.

5. As a music teacher, Ware worked on a 9.25 month contract.

6. Ethel Dunbar became principal at Franklin Elementary on August 9, 1995.

7. In late March, 1996, Dunbar scored Ware as "very good" in all eight essential

instructional competencies in her formal evaluation of Ware. She remarked then, "Mrs. Ware is a talented creative employee that works for the betterment of the school. It has been a pleasure to work with her."

8. In 1997 and 1998, Reba Reynolds, the assistant principal at Franklin performed Ware's evaluations. She too rated Ware very highly.

9. For the 1998-99 school year, Dunbar asked Ware to serve as a "theme specialist." This position was not posted as a vacancy at LRSD. Dunbar had the discretion to place whomever she wanted in the position. The position was for a 9.25 month contract. Ware remained theme specialist for three years.

10. For the school years 1998-99 through 2000-01, Dunbar evaluated Ware with the highest marks on her annual evaluations.

11. On July 19, 2000, Reba Reynolds, who was then assistant principal at Franklin Elementary, requested and was granted a transfer from Franklin to the same position at Gibbs Elementary School.

12. Dunbar recommended Ware for a promotion to the assistant principal position left vacant by Reynolds.

13. In making the recommendation, Dunbar admittedly went "against the grain" of a former practice within the District's elementary schools, whereby if the principal was one race, the assistant principal was a different race.

14. That practice's stated goal was to ensure that the administrative staffs at the District's elementary schools were racially diverse, particularly in schools that had a racially diverse student body.

15. Both Ware and Dunbar are African-American.

16. Because the student body at Franklin was more than 90% African-American, Frances Jones, Dunbar's supervisor and Assistant Superintendent for Elementary Education, supported Dunbar's recommendation of Ware as assistant principal.

17. Ware did not receive the assistant principal position. Karen Carter, a white female, was hired. Carter was the former assistant principal at Fulbright Elementary whose position was eliminated after Fulbright's enrollment decreased.

18. The Franklin assistant principal position was eliminated the following year, 2001-02 because of a decrease in student enrollment at Franklin.

19. Ware filed an EEOC charge in October 2000 alleging that she was discriminated against on the basis of her race when Carter was chosen to fill the Franklin assistant principal position.

20. While Ware's EEOC charge was pending during the summer of 2001, Dunbar requested that Ware be reassigned as "Curriculum Specialist," a position on a 10 month contract. The position was not posted and Dunbar's recommendation of Ware for the position was approved by Francis Jones. This change resulted in an increase in Ware's salary based on the additional number of days she was under contract.

21. Ware filed suit against the District on February 22, 2002 alleging race discrimination with regard to the assistant principal position.

22. Dunbar expressed disapproval when Ware decided to pursue her discrimination claim.

23. Dunbar was deposed in Ware's first Title VII lawsuit on December 4, 2002. The

case was scheduled for trial on February 3, 2003. The parties reached a tentative settlement around January 23, 2003, and informed the court that a settlement had been reached. The case was formally dismissed the same day although a final settlement agreement was not signed until some time in late March, 2003.

24. While a draft of the settlement agreement was being circulated, Ethel Dunbar suspended Ware for three days for tardiness. The parties agreed to amend the settlement agreement to limit Ware's release of liability of only those claims arising prior to January 20,2003.

25. During March, 2003, the partes were negotiating a settlement of Ware's claim that Dunbar had suspended her in January in retaliation for her then pending lawsuit. The district's settlement position required Ware to move to a 9.25 month teaching position at another school. Ware was unwilling to move to the teaching position offered.

26. On April 3, 2003, Mr. Clay Fendley, the LRSD's attorney, expressed the district's concern that Dunbar would continue to take adverse action against Ware; his final e-mail effort to settle the issues stated that the district wanted to transfer Ware from Franklin Elementary "to prevent future litigation related to actions Ms. Dunbar may take against her [Ware]."

27. On April 3, 2003, Dunbar submitted a "Position Deletion Request Form" to Francis Jones and Beverly Williams seeking to eliminate Ware's curriculum specialist position at Franklin. Dunbar also submitted a "New Position Request Form" to create a new position for an "accountability specialist." The LRSD did not have a job with the title of "accountability specialist" at that time.

28. In accordance with the LRSD and the Little Rock Classroom Teachers Association

4

Professional Negotiations Agreement for 2000-03 (PNA), LRSD Superintendent Kenneth James informed Ware by letter dated April 24, 2003, of his "recommendation that [her] contract not be renewed under the same terms for the 2003-04 school year. [Her] contract length [would ] be changed from 10 months to 9.25 months." Mr. James stated that his reason for the recommendation was the elimination of the Curriculum Specialist position. Mr. James advised Ware that she was entitled to a hearing before the Board of Directors with regard to his recommendation.

29. Director of Human Resources Beverly Williams called Ware to a meeting in early May to discuss her assignment for the next year. This meeting was required by the PNA. Frances Jones also attended the meeting. Williams and Jones reiterated that Ware was being involuntarily transferred because her position was being eliminated.

30. Ware alleges that she asked about the accountability specialist position and Williams and Jones informed her that she would not be eligible for the position because she did not meet the qualifications. Williams and Jones deny this.

31. Ware further contends that Dunbar told her she would not be considered for the job.

32. Ware contends that the elimination of her position and establishment of a new position was a means of removing her from Franklin in retaliation for protected activity related to her prior lawsuit and the claim of retaliation arising from her January suspension.

33. In its defense, LRSD asserts that the new position was created in an attempt to reorganize the school in the face of sanctions by the state, not as a part of an effort to retaliate against Ware. LRSD also contends that Ware did not apply for the accountability specialist opening.

34. Ware applied for assistant principal positions during the summer, not knowing what her assignment would be if she did not get one of the assistant principal openings. Ware was not selected for an assistant principal position and on June 17, 2003, Jones and Williams approved the reassignment of Ware to Chicot Elementary.

35. Dunbar solicited Dorothy Phillips for the accountability specialist position in mid July, 2003. Ms. Phillips believes she did not accept the position until early August. In April, 2005, Dunbar informed Phillips that the accountability specialist position would be changed to a 9.25 month contract beginning in August 2005.

36. Ware contacted the EEOC on September 12, 2003 and filed her charge on October 28, 2003. She alleged she was suspended in January, 2003 and demoted on August 13, 2003 in retaliation for pursuing the previous lawsuit. Ware received her notice of right to sue on June 28, 2004. Suit was filed on September 23, 2004.

37. Plaintiff contends that the qualifications for the accountability specialist position were tailored to specifically exclude her from eligibility in retaliation for her prior protected activity. As a consequence of the elimination of her job, her contract was reduced from 10 months to 9.25 months. Additionally, Plaintiff contends that the demotion effected other terms and conditions of her employment in that she now teaches music and has lost the status of being in an administrative career track position.

38. Ware contends that she was in fact qualified to perform the job duties of the accountability specialist position.

Conclusions of Law

1. Plaintiff's Title VII disparate treatment claims, §1981 claims and Arkansas Civil

Rights Act claims are analyzed in the same manner. *Davis v. KARK-TV, Inc*., 421 F.3d 699 (8th Cir. 2005). The *McDonnell Douglas* burden shifting analysis governs the order and allocation of proof. To establish a prima facie case of retaliation, the plaintiff must show: a statutorily protected activity; an adverse employment action; and a causal connection between the two. Once the prima facie case is made, the defendant must articulate a legitimate, nondiscriminatory reason for its actions. The burden then shifts to the plaintiff to establish that the alleged legitimate, nondiscriminatory reason for the demotion was a pretext. *See, Kratzer v. Rockwell Collins, Inc*. 398 F.3d 1040, 1048 (8th Cir, 2005).

    2. Ware has met her burden of proof to establish a prima facie case and pretext.

    3. Ware was engaged in a protected activity and suffered an adverse employment action. Further, the adverse employment actions were continuing in nature, culminating in her reassignment to a music teaching job which was approved on June 17, 2003 and a causal connection exists between her protected activity and the adverse employment action.

    4. Ware's EEOC charge was timely filed based upon the involuntary transfer form approving her transfer from Franklin to Chicot as a music teacher dated June 17, 2003 and based upon the date upon which Ware was advised that she had been transferred to Chicot in August, 2003. Until that time, Ware had been advised that Kenneth James, Superintendent of Schools had "recommended" that her position at Franklin be eliminated and that she had been identified as "surplus" by her principal. The Court finds that the adverse employment action occurred upon her placement to a teaching position, a 9.25 month contract. Alternatively, the Court finds that the earliest Ware could have reasonably determined that her contract would be reduced to a 9.25 month contract is thirty (30) days following the receipt of Mr. James' recommendation letter.

Pursuant to Ark. Code Ann. §6-17-1509, the earliest the Board of Directors could have upheld the recommendation of Mr. James was thirty (30) days after the written notice of the proposed contract change was received by Ware. Until that time, the recommendation was not final as it had not been acted on by the LRSD Board of Directors. *Duty v. Norton-Alcoa Proppants*, 293 F. 3d 481, 489-90 (8th Cir. 2002) (for purposes of determining when 180-day time period commences, jury properly instructed that "[a] person is considered to have been terminated by his employer on the date on which he receives notice which would inform a reasonable person in his position that he had been terminated.") In *Duty*, the Court found that the jury rationally determined that notice to the claimant by an individual who did not have authority to terminate him without consulting a panel of supervisors, did not constitute official notice of termination.

  5. The causal connection between the protected activity and the demotion is demonstrated not only by the temporal connection between the events but also by the facts surrounding the events. The job description of the accountability specialist position was novel, no such position existed in the LRSD. The job duties performed by Ware as curriculum specialist were remarkably similar to the job duties performed by the accountability specialists hired to fill the new position.

  6. Defendant met its burden of production presenting evidence to show a legitimate non-discriminatory reason for its actions: Dunbar wanted Ware's position eliminated so she could afford to hire a different kind of specialist to perform different job duties.

  7. Plaintiff presented sufficient evidence of pretext by offering evidence that the persons hired to fill the accountability specialist position performed substantially the same job duties Ware performed as a curriculum specialist. The additional duties could have been performed by

Ware. Dunbar altered her prior practice of utilizing the staff she had for newly designed positions. Jones and Williams were aware of the dispute existing between Ware and Dunbar, yet readily approved the elimination of her position.

8. The Court finds that the new position was created as a pretext to remove Ware from Dunbar's school in retaliation for her prior protected activity.

9. Plaintiff is entitled to an award of back pay in the amount of $ 8,148.28. Plaintiff is not entitled to reinstatement as the positions no longer exist. Plaintiff is entitled to an award of $2,000 for mental anguish. Plaintiff may submit a separate application for attorneys fees and costs.

IT IS SO ORDERED this 26th day of April, 2007.

James M. Moody
United States District Judge